## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WHITEFORD, TAYLOR, PRESTON, LLP,

    Plaintiff/Counter Defendant,

    v.

VICKY McCAULEY,

    Defendant/Counterclaimant

AND

JEANI WILLIAMS,

    Defendant.

Case No: 1:25-cv-03079-SAG

### DEFENDANT MCCAULEY'S ANSWER TO COMPLAINT, COUNTERCLAIM, AND JURY DEMAND

### ANSWER

Defendant/Counterclaimant, Vicky McCauley ("McCauley"), through her undersigned counsel, hereby answers the Complaint and Request for Temporary, Preliminary, and Permanent Injunctive Relief (the "Complaint") filed by the Claimant Whiteford, Taylor, Preston, LLP ("Whiteford"). McCauley generally denies liability on all claims and all counts. Each paragraph below responds to the numbered Paragraphs in the Complaint. Any allegation not explicitly admitted below is hereby denied.

The initial three-and-a-half pages of the Complaint are an "Introduction" containing solely narrative text to which no response is required. To the extent an answer is deemed required, McCauley denies the assertions contained in the "Introduction" and asserts that Whiteford has

misrepresented material facts, violated basic ethical and professional responsibilities, and appears to bring the instant claims on the misguided belief that the Firm has a protectable property interest in client files, even after being expressly terminated by said clients and directed to transfer files to replacement counsel. McCauley responds to the numbered Paragraphs of the Complaint in turn below:

1.      McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 1 of the Complaint.

2.      Admitted.

3.      Admitted.

4.      The allegations contained in Paragraph 4 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 4 of the Complaint.

5.      The allegations contained in Paragraph 5 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 5 of the Complaint.

1.      McCauley admits that Whiteford goes to market as a full-service law firm. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in the second Paragraph 1[1] of the Complaint, and those allegations are therefore denied.

2.      McCauley lacks sufficient knowledge to admit or deny the allegations contained in the second Paragraph 2 of the Complaint, and those allegations are therefore denied.

3.      McCauley lacks sufficient knowledge to admit or deny the allegations contained in the second Paragraph 3 of the Complaint, and those allegations are therefore denied.

---

[1] The paragraphs of Plaintiff's Complaint are initially numbered 1-5 and then begin again at 1-94. Defendant therefore answers with this same incorrect numbering.

4.      McCauley lacks sufficient knowledge to admit or deny the allegations contained in the second Paragraph 4 of the Complaint, and those allegations are therefore denied.

5.      McCauley lacks sufficient knowledge to admit or deny the allegations contained in the second Paragraph 5 of the Complaint, and those allegations are therefore denied.

6.      McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 6 of the Complaint, and those allegations are therefore denied.

7.      Denied.

8.      McCauley avers that the Employee Handbook is the best evidence of its contents. McCauley admits the allegations in Paragraph 8 only to the extent that they are supported by the Employee Handbook; otherwise, denies the allegations.

9.      McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 9 of the Complaint, and those allegations are therefore denied.

10.     Admitted.

11.     Admitted.

12.     Denied.

13.     Admitted.

14.     Admitted.

15.     McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 15 of the Complaint, and those allegations are therefore denied.

16.     McCauley admits that she had access to lists that contain client information. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 16 of the Complaint, and those allegations are therefore denied.

17.     Admitted.

18.    McCauley admits sometime after June 23, 2025, she was provided a draft "Notice of Transfer" letter and was instructed to correct any typographical errors. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 18 of the Complaint, and those allegations are therefore denied.

19.    McCauley admits sometime after June 23, 2025, she was provided a draft "Notice of Transfer" letter and was instructed to correct any typographical errors. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 19 of the Complaint, and those allegations are therefore denied.

20.    McCauley admits sometime after June 23, 2025, she was provided a draft "Notice of Transfer" letter and was instructed to correct any typographical errors. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 20 of the Complaint, and those allegations are therefore denied.

21.    McCauley admits she sent a Notice of Transfer letter to the clients of her supervisor as directed by her supervisor. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 21 of the Complaint, and those allegations are therefore denied.

22.    McCauley denies she sent any Notice of Transfer letter which misrepresented Whiteford's security of client documents. To the extent paragraph 22 alleges facts pertaining to letters McCauley did not send, McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 22 of the Complaint, and those allegations are therefore denied.

23.    McCauley admits sending Notice of Transfer letters to those clients with electronic mail addresses believed to be in Virginia and Washington DC, as directed by her supervisor, and

that her supervisor was not licensed to practice law in the State of Maryland. All remaining allegations in Paragraph 23 are denied.

24.    Denied.

25.    Denied.

26.    McCauley admits she sent a Notice of Transfer letter to the clients of her supervisor as directed by her supervisor while employed with Whiteford, as McCauley understood was not only permitted by applicable ethical and professional conduct rules but required. All remaining allegations in Paragraph 26 are denied.

27.    McCauley denies making any defamatory statement regarding Whiteford while employed with Whiteford or following her resignation. McCauley does admit she is aware that Whiteford does not properly secure its clients' files and otherwise puts its clients in danger of losing crucial original documents. All other allegations in Paragraph 27 are denied.

28.    McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 28 of the Complaint, and those allegations are therefore denied.

29.    McCauley admits in the course of her performance as a paralegal, at times prior to her resignation she was required to contact clients with whom she had not previously had contact with. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 29 of the Complaint, and those allegations are therefore denied.

30.    McCauley admits she sent Notice of Transfer letters to the clients of her supervisor as directed by her supervisor while employed with Whiteford. All remaining allegations in Paragraph 30 are denied.

31.    McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 31 of the Complaint, and those allegations are therefore denied.

32.    McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 32 of the Complaint, and those allegations are therefore denied.

33.    Denied.

34.    McCauley admits she sent a list of some clients to her personal email address. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 34 of the Complaint, and those allegations are therefore denied.

35.    McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 35 of the Complaint, and those allegations are therefore denied.

36.    McCauley admits she sent communications to her supervisor, and then former supervisor, containing contact information for that attorney's clients. McCauley denies using a thumb drive on her Whiteford laptop, **ever**. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 36 of the Complaint, and those allegations are therefore denied.

37.    McCauley admits she maintains a list of her supervising attorney's clients. McCauley denies this list includes any clients in Maryland. McCauley lacks sufficient knowledge to admit or deny the allegations regarding Whiteford's "belief[s]." To the extent that a response is deemed required, McCauley denies all remaining allegations in Paragraph 37 of the Complaint.

38.    McCauley admits she received an email from Williams regarding her supervisor's clients. McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 38 of the Complaint, and those allegations are therefore denied.

39.    McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 39 of the Complaint, and those allegations are therefore denied.

40.     McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 40 of the Complaint, and those allegations are therefore denied.

41.     McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 41 of the Complaint, and those allegations are therefore denied.

42.     McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 42 of the Complaint, and those allegations are therefore denied.

43.     McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 43 of the Complaint, and those allegations are therefore denied.

44.     McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 44 of the Complaint, and those allegations are therefore denied.

45.     McCauley admits she sent Notice of Transfer letters via DocuSign, as routine and instructed. McCauley denies the characterization these letters were "Unauthorized" or Whiteford's authority to describe them as such, rather than the relevant state bar associations. McCauley admits she removed copies of the notifications from DocuSign regarding these letters as sent to her email address. McCauley denies removing a notification from her Inbox is in anyway an attempt to conceal sending the letters via DocuSign, a service which she understands to maintain a record of activity, which Whiteford had and has access to, which is why the service was used, and why redundant notifications were deleted.

46.     McCauley admits Whiteford removed her access to DocuSign and unlawfully canceled letters sent to clients regarding their right to choose their legal representation.  McCauley lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 46 of the Complaint and those remaining allegations are therefore denied.

47.     McCauley admits she received a cease-and-desist letter making unfounded claims and demands. McCauley admits she did not dignify this letter with a substantive response.

48.     Admitted.

49.     McCauley lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 49 of the Complaint, and those allegations are therefore denied.

### COUNT ONE – Breach of Fiduciary Duty

50.     McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Answer as if set forth fully herein.

51.     The allegations contained in Paragraph 51 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 51 of the Complaint.

52.     The allegations contained in Paragraph 52 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 52 of the Complaint.

53.     The allegations contained in Paragraph 53 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 53 of the Complaint.

54.     Denied.

### COUNT TWO – Defend Trade Secrets Act

55.     McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Answer as if set forth fully herein.

56. The allegations contained in Paragraph 56 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 56 of the Complaint.

57. The allegations contained in Paragraph 57 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 57 of the Complaint.

58. The allegations contained in Paragraph 58 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 58 of the Complaint.

59. Denied.

60. Denied.

61. The allegations contained in Paragraph 61 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 61 of the Complaint.

62. Denied.

### COUNT THREE – Maryland Uniform Trade Secrets Act

63. McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Answer as if set forth fully herein.

64. The allegations contained in Paragraph 64 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 64 of the Complaint.

65.     The allegations contained in Paragraph 65 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 65 of the Complaint.

66.     The allegations contained in Paragraph 66 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 66 of the Complaint.

67.     Denied.

68.     Denied.

69.     The allegations contained in Paragraph 69 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 69 of the Complaint.

70.     Denied.

**COUNT FOUR – Virginia Uniform Trade Secrets Act**

71.     McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Answer as if set forth fully herein.

72.     The allegations contained in Paragraph 72 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 72 of the Complaint.

73.     The allegations contained in Paragraph 73 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 73 of the Complaint.

74.    The allegations contained in Paragraph 74 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 74 of the Complaint.

75.    Denied.

76.    Denied.

77.    The allegations contained in Paragraph 77 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 77 of the Complaint.

78.    Denied.

**COUNT FIVE – Tortious Interference with Business Relations**

79.    McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Answer as if set forth fully herein.

80.    The allegations contained in Paragraph 80 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 80 of the Complaint.

81.    The allegations contained in Paragraph 81 are legal conclusions to which no response is required and are not directed at McCauley. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 81 of the Complaint.

82.    Denied.

83.    Denied.

84.    Denied.

## COUNT SIX - Defamation

85.     McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Answer as if set forth fully herein.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Answer as if set forth fully herein.

92.     Denied.

93.     The allegations contained in Paragraph 93 are legal conclusions to which no response is required. To the extent a response is deemed required, McCauley denies the allegations contained in Paragraph 93 of the Complaint.

94.     Denied.

The remainder of Plaintiff's Complaint asserts no facts but rather makes a prayer for relief to which no response is required. To the extent a response is deemed required, McCauley denies all allegations contained therein.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     Some or all of the claims asserted in the Complaint are barred, in whole or in part, by the doctrines of waiver or estoppel.

3.      Some or all of the claims asserted in the Complaint are barred, in whole or in part, by the doctrine of unclean hands.

4.      At all times, McCauley acted in good faith and McCauley had reasonable grounds to believe that any act or omission was not a violation of applicable law.

5.      Allegedly defamatory statements of McCauley are in fact true and not defamatory as a matter of law.

6.      Plaintiff did not suffer and has not suffered any injury.

7.      Any information controlled by Plaintiff, accessed by McCauley was and is readily ascertainable through legitimate methods.

8.      Plaintiff failed to take reasonable efforts to prevent discovery and or disclosure of their alleged trade secrets and/or alleged confidential information.

9.      McCauley reserves the right to amend this Answer should she later discover facts demonstrating the existence of new and/or additional affirmative defenses, and/or should a change in the law support the inclusion of new and/or additional affirmative defenses.

**COUNTERCLAIM**

Defendant/Counterclaimant, Vicky McCauley ("McCauley"), states as follows by way of Counterclaim against Whiteford, Taylor, Preston, LLP ("Whiteford" or the "Firm"):

**INTRODUCTION**

McCauley has worked as a paralegal for ten (10) years with great success. For the past decade, her work has been exclusively in the support of a single attorney's Trust and Estates practice. In early 2024, this attorney (hereinafter referred to as "EP"), then an Equity Partner at Whiteford, requested McCauley to work with her part-time at Whiteford to support EP's Trust and Estates practice. McCualey did so until EP, in June of 2025, announced she would be leaving Whiteford. As McCauley had been hired by Whiteford to support EP, she likewise announced her resignation. EP and Whiteford began negotiating how EP's clients would be informed of her transition, with McCauley generally only correcting and sending notices provided to her as a result of this process.

McCauley later joined EP at a new firm, with her primary responsibility being assisting EP to provide legal services to her clients. McCauley and EP immediately began receiving notices from several of EP's former clients that they had terminated or intended to terminate their engagement with Whiteford and then wished to engage with EP at her new firm. McCauley assisted with this transition, as directed by EP and the clients. Whiteford has repeatedly refused to follow the express desire of these clients, and has, to date, refused to meet its professional and ethical duty in transferring crucial files to either McCauley or EP. This obstinance has prevented EP from adequately representing her clients, to their direct detriment. Likewise, McCauley has been prevented from assisting EP in the performance of this legal work.

14

Whiteford's unjustifiable interference with these clients' rights and McCauley's and EP's professional relationship with these clients has had its intended effect. McCauley's new employer hired her and EP with the expectation that they would have an immediately available base of clients and associated billings. With Whiteford unlawfully preventing and interfering in the transfer of client files and related work and anticipated revenue, McCauley and EP ultimately were both terminated from their employment with the new firm.

With such facts showing malicious intent to interfere with McCauley's employment, McCauley brings this counterclaim for tortious interference and requests punitive damages.

## PARTIES

1.      Vicky McCauley is a former employee of Whiteford.

2.      Whiteford is law firm and, on information and belief, is organized under the laws of Maryland with its principal place of business at 7 Saint Paul Street, Baltimore, Maryland 21202.

## JURISDICTION

3.      This Court has jurisdiction over McCauley's Counterclaim pursuit to Fed. R. Civ. P. 13(g) as this claim arises out of the same transaction or occurrence which forms the basis of Plaintiff's Complaint. This Court further has jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the Plaintiff/Counterclaim Defendant resides in this district.

## BACKGROUND

5.      In early 2024, EP an equity partner at Whiteford with whom McCauley had previously worked requested McCauley to accept a position at Whiteford as a paralegal. McCauley joined Whiteford in February 2024 as a part-time paralegal reporting to EP and assisting EP in her

15

ongoing Trust and Estates practice.

6. In June of 2025, EP announced she would be leaving Whiteford for another firm, Offit Kurman. Soon after, McCauley submitted her own notice of resignation making no representations of her future work but assuming the obvious intention would be surmised by Whiteford.

7. McCauley was aware EP and Whiteford then negotiated a communication to be sent to clients informing the clients that EP would be leaving Whiteford. McCauley did not participate in or influence these negotiations and later learned that EP and Whiteford did not agree on a joint communication.

8. EP tasked McCauley with making any typographical corrections to the client communication on EP's behalf and send such communications to EP's clients. McCauley sent these communications through her Whiteford DocuSign account in order to secure the communications and maintain a record of each communication sent. Possessing limited contact information, McCauley only sent notices to those clients of EP that had electronic mail contact information available.

9. Several clients responded to these communications, and informed Whiteford, McCauley, and EP that they would be hiring EP at her new firm. On information and belief, Whiteford later accessed the DocuSign account McCauley used and cancelled several of the prior communications to EP's clients.

10. McCauley accepted part time employment at Offit Kurman, wherein she was expected again to assist and work directly for EP. In doing so, McCauley attempted to assist in transitioning those clients that wished to hire EP to EP's new firm, Offit Kurman. McCauley has experience in handling such transition when an attorney moves firms and was advised of the ethical

and professional duties held by attorneys in this process.

11.     Whiteford purposefully made such transition as difficult as possible by requiring some of EP's clients to sign multiple, redundant statements authorizing the file transition and refusing to transfer crucial client documents regardless of notice from the clients that the transfer was authorized and required. This included refusing to provide client documentation needed for upcoming court proceedings for some of EP's clients.

12.     Whiteford further refused to transfer files for certain of EP's clients that had never even engaged with Whiteford.

13.     On several occasions EP's clients, and potential clients, expressed extreme frustration in this transition process which prevented EP from providing needed legal services, and therefore prevented McCauley from working to assist EP in providing such services.

14.     Whiteford's refusal to transfer such client information or full client information and the resulting disruption to both EP and McCauley's work for these clients has injured and will continue to injure McCauley. This injury, including damage to McCauley's relationships and professional reputation, was intended by Whiteford and reflects actual malice.

15.     On August 6, 2025, Whiteford submitted a complaint against EP to the American Arbitration Association ("AAA"). AAA is a non-public forum. However, on September 16, 2025, Whiteford filed a Complaint in this Court against McCauley and Jeani Williams, another paralegal that worked under EP at Whiteford. While the Complaint did not identify EP by name, she was easily identifiable by context, and EP was contacted by media regarding the Complaint even prior to its service on McCauley and Williams.

16.     On information and belief, Whiteford has no good faith basis to support claims against McCauley or Williams, nor any expectations that McCauley, an elderly part-time paralegal,

17

would have any funds to recover even if the claims were legitimate and ultimately successful. On information and belief, the Complaint brought against McCauley was filed in a vindictive and thinly veiled attempt to publicly embarrass EP and further harm both EP's and McCauley's business relationships simply out of spite.

17. Regrettably, Whiteford was successful in their unlawful interference with both EP's and McCauley's careers and legal practices. On September 29, 2025, Offit Kurman terminated both EP and McCauley as a direct result of Whiteford's refusal to transmit requested client files and resultant disruption to their practices.

18. Following their terminations from Offit Kurman, Whiteford continues to engage in wrongful conduct intended to interfere with EP's practice and McCauley's ability to continue her career in support of EP. Specifically, Whiteford has sent correspondence to former clients of EP that have never been clients of Whiteford, including clients in jurisdictions (e.g., California) where Whiteford has no presence or attorneys but in which EP is still barred. These letters have created further disruption to EP's practice and legacy client relationships and further injury to McCauley and her ability to support such practice and relationships.

19. This continued interference with EP's client relationships and practice, further harms McCauley as the last and likely final chapter of her career has been solely in the service of EP – i.e., harm to EP is harm to McCauley.

### COUNT ONE
**(Tortious Interference With Business Relationship)**

20. McCauley repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

21. To state a claim for tortious interference with business relations under Maryland law, a plaintiff must establish: "(1) intentional and willful acts; (2) calculated to cause damage to

the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *InfoTek Corporation v. Preston*, 626 F. Supp. 3d 885, 895 (D. Md. 2022) (*quoting Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 831 A.2d 49, 53 (Md. 2003)).

22.     As stated above, Whiteford has intentionally, willfully and in violation of applicable rules of professional conduct and ethics, refused to transfer EP's clients' files and/or complete client files.

23.     The intent of Whiteford's actions and inactions in this regard was to disrupt EP's legal practice and McCauley's support of said practice. Given this intent and the wrongful nature of refusing to transfer files of clients requesting such transfer, Whiteford's conduct was engaged in with actual malice.

24.     Whiteford's wrongful conduct led to McCauley's successor employer, Offit Kurman, to express frustration that EP and McCauley were unable to perform expected work for the clients and generate anticipated billing revenue. In turn, McCauley has been prevented from her work in assisting EP with these clients and generating additional revenue for Offit Kurman.

25.     On information and belief, as a result from this frustration and to avoid or minimize further entanglement with the lawsuit filed by Whiteford on September 16, 2025, Offit Kurman terminated McCauley and EP on September 29, 2025.

26.     Offit Kurman would not have terminated McCauley's employment relationship but for Whiteford's unlawful and tortious interference with McCauley's work supporting EP and her related employment with Offit.

27.     McCauley and EP's termination was the intended outcome of Whiteford's wrongful

19

conduct.

28.     Whiteford acted with malicious intent to harm EP and McCauley or with conscious indifference to the consequences of its campaign against EP. McCauley is not a direct competitor of Whiteford as is EP. In sum, McCauley's paralegal career has been intentionally sacrificed by Whiteford as collateral damage in that firm's vindictive conduct against EP.

29.     McCauley has been, and continues to be, damaged by Whiteford's actions.

30.     As a result of Whiteford's tortious interference, McCauley has lost her expected hourly wages, other compensation, and benefits at Offit Kurman. McCauley will continue to suffer from Whiteford's actions, including their continuing wrongful conduct after her termination from Offit Kurman, as that conduct continues to interfere with her EP's client relationships and therefore McCauley performing future work in support of EP.

### PRAYER FOR RELIEF

McCauley has suffered and continues to suffer damages as a result of the conduct of Whiteford. WHEREFORE, McCauley respectfully prays that the Court order as follows:

A.     Award compensatory damages in an amount to be determined at trial;

B.     Award punitive damages in an amount sufficient to punish Whiteford for its egregious conduct and to deter similar conduct by Whiteford against subsequent paralegals who follow typical and lawful directions from supervising attorneys seeking to transition their practice, clients, and related client files;

C.     Award such other relief deemed appropriate by the Court.

## JURY DEMAND

McCauley hereby demands that all issues arising out of or related to her Answer, Affirmative Defenses, and/or Counterclaim that are appropriately determinable by a jury be submitted to a jury.


Respectfully submitted,


Dated: October 20, 2025                    /s/ David R. Warner, Esq.
                                           David R. Warner, Esq. (Md. Fed. Bar #13166)
                                           Tyler Freiberger, *pending admission*
                                           WARNER PLLC
                                           1818 Library Street, Suite 500
                                           Reston VA 20190
                                           T: (703) 951-1919
                                           F: (703) 956-3009
                                           dwarner@warnerpllc.com
                                           tfreiberger@warnerpllc.com

                                           *Attorneys for Defendant Vicky McCauley*


## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of October 2025, a copy of the foregoing Answer and Counterclaim was filed via the Court's ECF system and served on counsel for Plaintiff at the following email addresses: parker.thoeni@ogletree.com and courtney.amelung@ogletree.com


                                           /s/ David R. Warner, Esq.
                                           David R. Warner, Esq.


21